UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
BRYAN SALMERON REYES, on behalf of himself
and all other persons similarly situated,

                            Plaintiff,                    **CLASS ACTION**
                                                              **COMPLAINT**

          -against-

CONTRACT PHARMACAL CORP.,                 *Jury Trial Demanded*

                 Defendant.
--------------------------------------------------------------------X

Plaintiff, BRYAN SALMERON REYES ("Plaintiff"), on behalf of himself and all other persons similarly situated, by and through his attorneys, the Law Office of Peter A. Romero PLLC, complaining of the Defendant, CONTRACT PHARMACAL CORP., alleges as follows:

## INTRODUCTION

1.      Plaintiff brings this action to recover unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law Articles 6 and 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations, 12 N.Y.C.R.R. Part 142 ("NYLL"), failure to timely pay his wages owed in violation of NYLL § 191, failure to provide accurate wage statements for each pay period under NYLL § 195(3), damages for retaliation for engaging in protected activity under the New York State Human Rights Law, New York Executive Law § 290 *et seq.* ("NYSHRL"), and any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiff brings this action against Defendant on behalf of himself and all other persons similarly situated pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"). Because the statute of limitations is continuing to run against Plaintiff and other similarly situated employees until they file a consent to join this action, Plaintiff seeks certification

of this matter as a collective action and leave to notify the "FLSA Collective," as defined as follows:

> All individuals who work and/or have worked for Defendant in the State of New York as an hourly-paid quality inspector and/or other similarly situated individuals, regardless of job title, at any time during the three years prior to the filing of their consent to join form..

3.      Plaintiff also brings his claims under the NYLL on behalf of himself, individually, and on behalf of any FLSA Collective Action Plaintiff, as that term is defined below, who opts-in to this action.

4.      Plaintiff was employed by Defendant as a "manual worker" within the meaning of NYLL § 190(4) at Defendant's manufacturing facilities located at 1324 Motor Parkway, Islandia, New York 11749 and 135 Adams Avenue, Hauppauge, New York 11788.

5.      Defendant paid Plaintiff and other individuals who work and/or have worked for Defendant in the State of New York in hourly-paid positions on a biweekly basis from the beginning of the statutory period until on or about September 19, 2021.

6.      As a result, Defendant violated the requirement that manual workers be paid weekly and within seven days after the end of the workweek in which the wages are earned in accordance with NYLL § 191(1)(a).

7.      Plaintiff brings his Third Claim for Relief as a class action pursuant to Federal Rule of Civil Procedure 23 seeking relief under NYLL § 198 for liquidated damages and interest, arising from Defendant's violation of NYLL § 191.  Because the harm suffered by Plaintiff and other similarly situated employees was widespread and pursuant to a company-wide policy, Plaintiff brings this claim as a class action and will seek certification under Federal Rule of Civil Procedure 23 ("Rule 23") for the following "Class" or "Class Members":

All current and former employees of Defendant who work and/or worked for Defendant in the State of New York in hourly-paid positions such as quality inspectors, machine operators, forklift operators, factory workers, porters, set-up technicians, technicians, packaging inspectors, and label counter workers, and/or any other similarly situated individuals, regardless of job title, at any time during the six years prior to the filing of this Complaint until the date of judgment in this action.

8.    Managers and others with executive positions, who are paid fixed salaries, are not members of the class that Plaintiff seeks to represent in this action.

## JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of New York, and 28 U.S.C. § 1391(b)(1) because Defendant resides within the Eastern District of New York.

## PARTIES

11.    Plaintiff is a resident of the County of Suffolk, State of New York.

12.    At all times relevant, Plaintiff was an "employee" within the meaning of the FLSA, 29 U.S.C. § 203(e) and NYLL §§ 190(2), 651(5), and the NYSHRL.

13.    At all times relevant, Defendant is and was a domestic business corporation with its principal place of business located at 135 Adams Avenue, Hauppauge, New York 11788.

14.    At all times relevant, Defendant has been and remains engaged in the manufacture and distribution of pharmaceutical products and supplements.

15.    At all relevant times, Defendant was subject to the requirements of the FLSA because it had annual gross revenue of at least $500,000, was engaged in interstate commerce and had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.  At all relevant times, Defendant's employees were engaged in the manufacture, packaging and shipping of pharmaceutical compounds and supplements, used machines, forklifts, tools, equipment, mops, brushes, solvents, cleaning supplies, raw materials used to manufacture Defendant's products, and other materials and equipment, many of which originated in other states.

16.    At all times relevant, Defendant was and still is an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d) and NYLL § 190(3).

17.    At all times relevant to the Complaint, Defendant CPC employed four or more employees and was and still is an "employer" within the meaning of the NYSHRL.

## FACTUAL ALLEGATIONS

### *Violations of the FLSA and NYLL*

18.    Defendant is a company that specializes in the production and shipment of various pharmaceutical products at its factory with facilities in Hauppauge and Islandia, New York. Defendant operates multiple facilities at its factory.

19.    Defendant employed Plaintiff as a non-exempt, hourly-paid quality inspector from in or about June 2019 until on or about April 10, 2023.  During his employment, Plaintiff worked at Defendant's facilities in Hauppauge and Islandia, New York.

20.    Throughout his employment, Plaintiff generally worked Monday through Friday from 8:00 a.m. until 4:30 p.m.  However during certain workweeks, Plaintiff was required to work additional hours during his shifts or additional shifts during his workweek.  Accordingly,

Defendant required Plaintiff to work, Plaintiff did work, in excess of forty hours during many of his workweeks.

21.     Throughout Plaintiff's employment, Defendant paid Plaintiff at his *regular* rate of pay for typically the first 43.75 hours of work during each workweek and typically paid him at an increased *overtime* rate of one and one-half times his regular rate for hours worked in excess of 43.75 hours per workweek.  Due to this practice, Defendant failed to pay Plaintiff at a rate of at least one and one-half times his regular rate of pay for all hours worked after 40 hours in a single workweek.  Instead, Defendant paid Plaintiff at his straight-time, *regular* rate of pay for certain hours worked in excess of forty hours during a single workweek.

22.     By way of example, during the workweek of February 6, 2023 through February 12, 2023, Plaintiff worked 46.5 hours.  For that workweek, Defendant paid Plaintiff for 43.75 hours at his straight-time, regular hourly rate of pay and 2.75 hours at his increased overtime rate of pay.

23.     By way of another example, during the workweek of June 27, 2022 through July 3, 2022, Plaintiff worked 45.5 hours.  For that workweek, Defendant paid Plaintiff for 43.75 hours at his straight-time, regular hourly rate of pay and 1.75 hours at his increased overtime rate of pay.

24.     By way of another example, during the workweek of November 28, 2022 through December 4, 2022, Plaintiff worked 47.25 hours.  For that workweek, Defendant paid Plaintiff for 43.75 hours at his straight-time, regular hourly rate of pay and 3.5 hours at his increased overtime rate of pay.

25.     Although Plaintiff regularly worked in excess of forty hours per workweek throughout his employment, Defendant failed to pay Plaintiff overtime at the rate of at least one and one-half times his regular rate of pay for certain hours worked in excess of forty hours in violation of the FLSA and NYLL.

26.     Defendant failed to provide Plaintiff with accurate statements of his wages earned, as such statements commonly do not state his correct hourly rates of pay, correct amount of regular and overtime hours worked, and his correct gross wages, net wages and deductions, for each pay period as required by NYLL § 195(3) throughout his employment.

27.     Defendant willfully disregarded and purposefully violated record keeping requirements of the FLSA and NYLL by failing to pay Plaintiff his correct overtime rate of pay in accordance with his hours worked.

28.     Throughout his employment, Plaintiff's duties included inspecting product and packaging prior to shipment; conducting various weight tests on Defendant's machines to ensure their scales are properly calibrated; carrying, lifting and transporting the necessary weights and equipment between machines and facilities to perform the weight tests; conducting air quality tests in Defendant's facilities; carrying, lifting and transporting by car the necessary equipment to perform air quality tests; lifting, carrying and moving Defendant's products among locations in Defendant's facilities; performing laboratory testing to ensure quality of products; and carrying and using equipment to monitor Defendant's machinery and facilities to ensure proper temperatures and pressures are being used.  The performance of Plaintiff's duties required prolonged standing, lifting, climbing, bending, and moving or carrying heavy materials.

29.     Throughout his employment, more than twenty-five percent of Plaintiff's hours worked each week were spent performing physical and manual tasks.

30.     At all times relevant to the Complaint, Plaintiff was a "manual worker" within the meaning of NYLL § 190(4).

31.     Throughout his employment, Plaintiff was entitled to payment of his wages earned on a weekly basis and within seven calendar days after the end of the workweek in which the wages were earned, in accordance with NYLL § 191(1)(a).

32.     Defendant failed to pay Plaintiff his wages weekly and within seven calendar days after the end of the workweek, in accordance with NYLL § 191(1)(a) from the beginning of Plaintiff's employment until on or about September 19, 2021.  Instead, Defendant paid Plaintiff his wages every two weeks in violation of NYLL § 191(1)(a) until on or about September 19, 2021.

33.     Every time that Defendant failed to pay Plaintiff and Class Members their wages earned weekly and within seven days of the end of the workweek, Defendant deprived them of the use of money to which they were legally entitled.

34.     As a result of Defendant's failure to timely pay their wages, Plaintiff and Class Members lost the time value of money.

35.     Plaintiff and Class Members are manual workers who depend upon their wages for sustenance and suffer harm that is particularly acute when their wages are delayed and they are temporarily deprived of their earned wages.

36.     Each time Plaintiff and Class Members received late compensation for the work that they performed, Defendant underpaid them for the work they performed.

37.     Every time that Defendant failed to pay Plaintiff and Class Members their wages earned weekly and within seven days of the end of their workweeks, Defendant deprived them of the use of money that belonged to them.  As a result, Plaintiff and Class Members were unable to do those things that every person does with their money, such as paying bills or buying goods that they needed or wanted to buy.

38.     By way of example, these delayed wages prevented Plaintiff and Class Members from spending money earned on a host of everyday expenses and to provide for their basic needs including, but not limited to, purchasing food and groceries, rent or mortgage payments, gas or heating oil, utilities, medical supplies and services, insurance, automobile payments, fuel for vehicles, education tuition and expenses, daycare or childcare, public transportation, and other basic living expenses.

39.     Additionally, Defendant's delayed payment of wages forced Plaintiff and Class Members to forgo purchasing goods and services until a later time after their receipt of their late paid wages.  Because of inflation, being an ever increasing scourge throughout the Covid-19 pandemic and recent events, Plaintiff and Class Members were required to pay increased prices for the goods and services that they otherwise would have purchased at an earlier date were their wages lawfully paid on a weekly basis.

40.     By retaining these wages earned beyond the timeframes set by NYLL § 191, Defendant benefitted from the time value of money and their free use of such funds, at the expense of Plaintiff and Class Members.  For example, during the interval of these delayed wage payments, Defendant was free to utilize those funds to purchase goods and services, purchase raw materials to manufacture its products, pay rent or mortgages on its facilities, pay installment payments and purchase fuel for its company-owned vehicles and equipment, pay for marketing and other business expenses, and accrue interest on those funds in its business accounts.

41.     Throughout the statutory period, Defendant has employed individuals who have worked for Defendant in the State of New York in hourly-paid positions including, but not limited to, quality inspectors, machine operators, forklift operators, factory workers, porters, set-up technicians, technicians, packaging inspectors, and label counter workers who have spent more

over 25% of their hours worked performing physical tasks such as lifting, climbing, bending, and moving or carrying heavy materials, and remaining on their feet to complete their duties.

42.     Throughout the statutory period, Defendant has employed quality inspectors who are responsible for inspecting product and packaging prior to shipment; conducting various weight tests on Defendant's machines to ensure their scales are properly calibrated; carrying, lifting and transporting the necessary weights and equipment between machines and facilities to perform the weight tests; conducting air quality tests in Defendant's facilities; carrying, lifting and transporting by car the necessary equipment to perform air quality tests; lifting, carrying and moving Defendant's products among locations in Defendant's facilities; performing laboratory testing to ensure quality of products; and carrying and using equipment to monitor Defendant's machinery and facilities to ensure proper temperatures and pressures are being used.  The performance of these duties required prolonged standing, lifting, climbing, bending, and moving or carrying heavy materials.

43.     Throughout the statutory period, Defendant has employed machine operators who are responsible for bringing raw material to the production line; assembling and disassembling machines; and putting materials, product and components in the machine.  The duties of a machine operator require reaching with arms and using hands and fingers to handle or feel objects and tools; stooping, kneeling, crouching, standing, bending, climbing stairs and ladders; and lifting, carrying and moving heavy materials weighing up to 50 pounds.

44.     Throughout the statutory period, Defendant has employed forklift operators who are responsible for operating a forklift to move, locate, relocate, stack and count materials; stacking skids or pallets; and pulling and preparing product for shipment.  The duties of the

forklift operator require the lifting, moving or carrying of heavy materials weighing up to 40 pounds and prolonged standing.

45.     Throughout the statutory period, Defendant has employed factory workers who are responsible for operating machinery; engaging in the manufacture of Defendant's pharmaceutical products; filling capsules of pharmaceutical products; lifting, transporting, and then installing heavy equipment into Defendant's machinery to manufacture Defendant's pharmaceutical products; lifting, transporting, and then filling Defendant's machinery with materials necessary to manufacture Defendant's pharmaceutical products; using tools and equipment to transport and install such equipment or materials; lifting and loading materials into the hopper of Defendant's machinery to manufacture pharmaceutical products; lifting and transporting Defendant's manufactured pharmaceutical products to areas for packaging; filling boxes and other containers with Defendant's pharmaceutical products; frequently lifting and transporting heavy boxes, packages and other containers of pharmaceutical products; stacking boxes or other containers of packaged pharmaceutical products for shipment; preparing pallets of packaged pharmaceutical products for shipment; disposing of unused or rejected pharmaceutical products; and cleaning the premises and machinery.  The duties of the factory worker require bending, lifting, walking, kneeling, reaching, pushing, carrying, and standing for prolonged periods of time.

46.     Throughout the statutory period, Defendant has employed porters who are responsible for cleaning windows, walls, doors, light fixtures, and ceilings; mopping, sweeping, vacuuming, scrubbing, stripping and waxing floors using industrial vacuum cleaners and/or buffing machines; moving cabinets, boxes, furniture, crates and equipment to clean areas; cleaning Defendant's facilities, cafeteria, locker room, and bathroom areas; emptying and taking out trash to a compactor or dumpsters; painting facilities and replacing floor tiles; sweeping

walks, clearing leaves, removing snow or performing other seasonal tasks; and organizing the stockroom and storage areas.  The duties of the porter require lifting, pushing, moving, or carrying heavy materials weighing up to 50 pounds and prolonged standing.

47.     Throughout the statutory period, Defendant has employed technicians who set up various packaging equipment before and during a job run.  The duties of the technicians require prolonged standing, lifting, climbing, bending, and moving or carrying heavy materials.

48.     Throughout the statutory period, Defendant has employed packaging inspectors who are responsible for monitoring packaging; inspecting packaging lines and equipment; and inspecting product prior to shipment.  The duties of the packaging inspector require prolonged standing, lifting, climbing, bending, and moving or carrying heavy materials.

49.     Throughout the statutory period, Defendant has employed label counter workers who are responsible for counting, lifting and placing labels into boxes; lifting, moving and carrying heavy boxes within Defendant's facilities; stacking and arranging heavy boxes on pallets; transporting boxes and pallets of boxes from Defendant's warehouse to work areas within Defendant's facilities; cleaning machinery to ensure their proper functioning; and performing quality control by examining and verifying that rolls were properly installed in machinery.  The performance of Plaintiff's duties required prolonged standing, walking, kneeling, reaching, lifting, pushing, moving, bending, and carrying of equipment and materials.

50.     The individuals who have worked for Defendant as machine operators, forklift operators, factory workers, porters, set-up technicians, technicians, packaging inspectors, and label counter workers in the State of New York are "manual workers" within the meaning of NYLL § 190(4).

51.     From the beginning of the statutory period until on or about September 19, 2021, Defendant's failure to timely pay wages earned caused Plaintiff and the Class to suffer the same or similar harms.

52.     Throughout the statutory period, Defendant treated and paid Plaintiff and the putative class and collective action members in the same or similar manner pursuant to Defendant's corporate-wide payroll and employment practices.

### *Unlawful Retaliation under the NYSHRL*

53.     Throughout his employment, Plaintiff was qualified for his position and satisfactorily performed his duties.

54.     Plaintiff is a homosexual male.

55.     Defendant and Plaintiff's supervisor were aware that Plaintiff is a homosexual male.

56.     Plaintiff's supervisor was widely known to favor heterosexual employees and to discriminate against homosexual employees.

57.     During much of Plaintiff's employment, including at the conclusion of his employment, Plaintiff's supervisor routinely harassed Plaintiff, made inaccurate statements about him, leveled false criticisms regarding his performance, and issued him false warnings, write ups, and other disciplinary actions.

58.     On or about February 24, 2023, Plaintiff complained to his supervisor that he believed she was discriminating against him due to his sexual orientation.  Plaintiff's complaint constitutes protected activity under the NYSHRL.  Plaintiff's supervisor disregarded his complaint of discrimination.

59.    Later that same day, on or about February 24, 2023, Plaintiff complained to Defendant's human resources staff that his supervisor was discriminating against him due to his sexual orientation.  Plaintiff's complaint again constitutes protected activity under the NYSHRL.

60.    On the same day, Defendant's human resources staff spoke with Plaintiff's supervisor regarding his complaint of discrimination.

61.    After these events and on the same day, on or about February 24, 2023, Defendant, though Plaintiff's supervisor, issued Plaintiff a write up based on false allegations of complaints and performance deficiencies.

62.    On or about April 10, 2023, Defendant summarily terminated Plaintiff's employment.

63.    Accordingly, Defendant retaliated against Plaintiff for engaging in protected activity, in violation on the NYSHRL.

## COLLECTIVE ACTION ALLEGATIONS

64.    Plaintiff and other FLSA Collective Action Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subject to Defendant's decision, policy, plan and common policies, programs, practices, procedures, protocols, routines, and rules willfully failing and refusing to pay them overtime pay for hours worked in excess of forty (40) hours each week.

65.    Upon information and belief, there are other current and former employees who are similarly situated to the Plaintiff, who have been underpaid in violation of the FLSA.  The named Plaintiff is representative of those other workers and is acting on behalf of the Defendant's current and former employees' interests as well as his own interest in bringing this action.

66.     Plaintiff seeks to proceed as a Collective Action with regard to his First Claim for Relief, pursuant to 29 U.S.C. § 216(b), on behalf of himself and all individuals who work and/or have worked for Defendant in the State of New York as an hourly-paid quality inspector and/or other similarly situated individuals, regardless of job title, at any time during the three years prior to the filing of their respective consent forms (hereinafter referred to as the "FLSA Collective Action Plaintiffs").

67.     Other persons similarly situated to Plaintiff who are currently or were formerly employed by Defendant should have the opportunity to have their claims for violations of the FLSA heard.  These similarly situated employees should be notified of and allowed to opt-into this action pursuant to 29 U.S.C. §216(b).  Unless the Court promptly issues such a notice, persons similarly situated to the Plaintiff who have been unlawfully deprived of overtime pay in violation of the FLSA will be unable to secure compensation to which they are entitled and which has been unlawfully withheld from them by the Defendant.

68.     The First Claim for Relief is properly brought under and maintained as an opt-in collective action pursuant to 29 U.S.C. § 216(b).  The FLSA Collective Plaintiffs are readily ascertainable.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendant.

## RULE 23 CLASS ACTION ALLEGATIONS
## NEW YORK LABOR LAW

69.     Plaintiff brings his Third Claim for Relief on behalf of himself and a class of persons under Fed. R. Civ. P. 23 consisting of all current and former employees of Defendant who work and/or worked for Defendant in the State of New York in hourly-paid positions such as quality inspectors, machine operators, forklift operators, factory workers, porters, set-up technicians, technicians, packaging inspectors, and label counter workers, and/or any other

similarly situated individuals, regardless of job title, at any time during the six years prior to the filing of this Complaint until the date of judgment in this action (hereinafter referred to as the "Class" or the "Class Members").

70.     The Class Members are readily ascertainable.  The number and identity of the Class Members are determinable from the records of Defendant.  The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendant's records.  For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant.  Notice can be provided by means permissible under Fed. R. Civ. P. 23.

71.     The proposed Class is numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.  Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendant, upon information and belief, there are more than forty individuals who are currently, or have been, employed by Defendant in hourly-paid positions covered by the Class during the six (6) years prior to the filing of the Complaint.

72.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including, but not limited to, whether Defendant paid Plaintiff and Class Members on a biweekly basis in violation of NYLL § 191, and the nature and extent of the Class-wide injury and the appropriate measure of damages for the class.

73.     Plaintiff's claims are typical of the claims of the Class that he seeks to represent. Defendant failed to pay Plaintiff and the Class Members "on a weekly basis and not later than seven calendar days after the end of the week in which the wages are earned," as required by NYLL

§ 191.  Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions.

74.    Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

75.    Plaintiff's claims are typical of those of the Class.  Plaintiff and the Class were all subjected to Defendant's policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay timely wages.

76.    Plaintiff's job duties and manner of payment are typical of those of the Class. Plaintiff and the Class spent over 25% of their working time performing physical tasks including, but not limited to, moving, lifting, and carrying materials, supplies, and equipment; and remaining on their feet for prolonged periods to complete their duties.

77.    From the beginning of the statutory period until on or about September 19, 2021, Plaintiff and the Class were paid every other week.

78.    From the beginning of the statutory period until on or about September 19, 2021, Defendant applied their biweekly payment policy to the Class uniformly as part of its corporate-wide pay policies and practices.

79.    Plaintiff and the Class were uniformly deprived of the time value of their earned wages during periods in which payment was illegally delayed.

80.    Plaintiff and the Class were uniformly deprived of the ability to use their earned wages – money to which they were legally entitled – during periods in which payment was illegally delayed.

81.    Plaintiff and the Class lost the time value of their earned wages.  Defendant, however, benefited from the delayed payments.  That is, among other things, Defendant reduced its administrative costs by paying less frequently than required and could use the extra money they were holding onto as they pleased until payroll was cut.

82.    All the Class Members were subject to the same corporate practices of Defendant. Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class Member. Additionally, Defendant's violations of NYLL § 191 by failing to timely pay wages earned caused Plaintiff and other Class Members to suffer the same or similar harms.  Plaintiff and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices, and procedures.

83.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.

84.    Plaintiff has retained counsel competent and experienced in class actions, wage and hour litigation, and employment litigation.

85.    A class action is superior to other available methods for the fair and efficient adjudication of litigation, particularly in the context of wage and hour litigation like the present action, where individual Plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in court against a corporate defendant.

86.    Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  The adjudication of individual litigation claims would result in a great expenditure of Court and public

resources; however, treating the claims as a class action would result in a significant savings of these costs. The prosecution of separate actions by individual Class members would create a risk of inconsistent and/or varying adjudications and judgments with respect to the individual Class members, establishing incompatible standards of conduct for the Defendant. Moreover, the issues in this action can be decided by means of common, class-wide proof.

87. The members of the Class have been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual Rule 23 Class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.

88. Furthermore, current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing those risks.

## FIRST CLAIM FOR RELIEF
## (FAIR LABOR STANDARDS ACT – UNPAID OVERTIME WAGES)

89. Plaintiff, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

90. Defendant employed Plaintiff and persons similarly situated to Plaintiff for workweeks longer than forty (40) hours and willfully failed to compensate the Plaintiff and persons similarly situated to Plaintiff for time worked in excess of forty (40) hours per week, at a rate of at least one and one-half times their regular hourly rate or pay, in violation of the FLSA.

91.     Defendant's violations of the FLSA, as described in this Complaint, have been willful and intentional.

92.     As a result of Defendant's unlawful acts, Plaintiff and persons similarly situated to Plaintiff are entitled to recover overtime compensation in amounts to be determined at trial, liquidated damages, attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
## (NEW YORK LABOR LAW – UNPAID OVERTIME WAGES)

93.     Plaintiff, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

94.     Defendant employed Plaintiff, and any FLSA Collective Action Plaintiff who opts-into this action, for workweeks longer than forty (40) hours and willfully failed to compensate the Plaintiff, and any FLSA Collective Action Plaintiff who opts-into this action, for time worked in excess of forty (40) hours per week at a rate of at least one and one-half times their regular hourly rate or pay, in violation of NYLL.

95.     By Defendant's failure to pay Plaintiff, Defendant's violations of the NYLL, as described in this Complaint, have been willful and intentional.

96.     Due to Defendant's violations of the NYLL, Plaintiff, and any FLSA Collective Action Plaintiff who opts-into this action, are entitled to recover from Defendant unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### THIRD CLAIM FOR RELIEF
### (NEW YORK LABOR LAW: FREQUENCY OF PAYMENT VIOLATIONS)

97.   Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

98.   Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, were "manual workers" within the meaning of NYLL § 190(4).

99.   Defendant was required to pay the Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, on a weekly basis, and not later than seven days after the end of the workweek in which the wages were earned.

100.   From the beginning of the statutory period until on or about September 19, 2021, Defendant failed to pay Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, on a weekly basis and instead paid Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, biweekly in violation of NYLL § 191.

101.   Every time that Defendant failed to pay Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, their wages earned weekly and within seven days of the end of the workweek, Defendant deprived them of the use of money to which they were legally entitled.

102.   As a result of Defendant's failure to timely pay their wages, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, lost the time value of money.

103.   Due to Defendant's violations of the NYLL, Plaintiff, Class Members and any FLSA Collective Action Plaintiff who opts-into this action, are entitled to damages equal to the total of the delayed wages and reasonable attorney's fees and costs.

## FOURTH CLAIM FOR RELIEF
## (VIOLATION OF NEW YORK LABOR LAW § 195(3))

104.    Plaintiff, and any FLSA Collective Action Plaintiff who opts-into this action, repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if fully set forth herein.

105.    Defendant failed to provide Plaintiff, and any FLSA Collective Action Plaintiff who opts-into this action, with accurate statements of their wages earned, including, *inter alia*, their correct hourly rates of pay, their correct amount of regular and overtime hours worked, and their correct gross wages, net wages and deductions, for each pay period as required by NYLL § 195(3).

106.    Due to Defendant's failure to provide Plaintiff, and any FLSA Collective Action Plaintiff who opts-into this action, with accurate wage statements with their wages as required by NYLL § 195(3), Plaintiff, and any FLSA Collective Action Plaintiff who opts-into this action, are entitled to statutory damages, reasonable attorneys' fees and costs of this action.

## FIFTH CLAIM FOR RELIEF
## (NEW YORK STATE HUMAN RIGHTS LAW – NYSHRL)

107.    Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if fully set forth herein.

108.    Based on the foregoing, Defendant retaliated against Plaintiff because of his protected activity, in violation of the NYSHRL.

109.    As a proximate result of Defendant's retaliation, Plaintiff has suffered and continues to suffer loss of past and future earnings and employment-related benefits, harm to his professional reputation, mental anguish, embarrassment, humiliation, and other incidental and consequential damages, attorneys' fees, costs and interest as permitted by law.

110.    Defendant retaliated against Plaintiff by engaging in willful, wanton, and/or reckless conduct and/or in conscious disregard of Plaintiff's rights and Plaintiff is therefore entitled to an award of punitive damages as against Defendant under the NYSHRL.

## DEMAND FOR A JURY TRIAL

111.    Plaintiff demands a trial by jury as to all issues in the above matter.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, FLSA Collective Action Plaintiffs and Class Members pray for the following relief:

(i)     Issuance an order restraining Defendant from any retaliation against Plaintiff, Class Members and FLSA Collective Action Plaintiffs for participation in any form in this litigation;

(ii)    Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under FLSA, and its supporting regulations, and the NYLL, Article 19, § 650 *et seq.*, and the supporting New York State Department of Labor Regulations;

(iii)   Designation of this action as an FLSA collective action on behalf of the Plaintiff and FLSA Collective Action Plaintiffs and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collective Action Plaintiffs, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

(iv)    Certification of a class action pursuant to Fed. R. Civ. P. 23;

(v)      Designation of Plaintiff as representative of the Class and counsel of record as Class Counsel;

(vi)     Awarding unpaid wages and an additional and equal amount as liquidated damages pursuant to 29 U.S.C. § 201 *et seq.* and the supporting United States Department of Labor regulations;

(vii)    Awarding unpaid wages, including but not limited to unpaid overtime wages, pursuant to the NYLL and Department of Labor Regulations, plus an additional and equal amount as liquidated damages;

(viii)   Awarding damages for violations of NYLL § 195 (3);

(ix)     Awarding damages for violations of NYLL § 191;

(x)      Awarding damages for violation of the NYSHRL, including, *inter alia*, back pay, front pay, lost employee benefits that Plaintiff would have otherwise received, benefits, and damages for emotional distress, pain, suffering and humiliation;

(xi)     Awarding punitive damages under the NYSHRL;

(xii)    Awarding all attorneys' fees incurred in prosecuting these claims;

(xiii)   Awarding all costs incurred in prosecuting these claims;

(xiv)    Awarding pre-judgment and post-judgment interest as permitted by law; and

(xv)   Granting such other relief as this Court deems just and proper.

Dated: Hauppauge, New York
April 28, 2023

LAW OFFICE OF PETER A. ROMERO PLLC
*Attorneys for Plaintiff*
490 Wheeler Road, Suite 250
Hauppauge, New York 11788
Tel.: (631) 257-5588

By: _____
DAVID D. BARNHORN, ESQ.
PETER A. ROMERO, ESQ.